STATE of Missouri ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Respondent,

v.

James Robert GILLESPIE, et al., Defendants,

Ryan Ruckman, Appellant,

Commerce Bank, N.A., and Agribank, FCB, Respondents.

No. WD 60612.

Missouri Court of Appeals, Western District.

Oct. 8, 2002.

William D. Farrar, Senior Assistant Counsel, Lee's Summit, MO, for Respondent MHTC.

Joseph R. Borich III, Leawood, KS, for Appellant.

Nicholas K. Robb, Stephen J. Briggs and James H. Counts, St. Joseph, MO, for Respondent, Commerce Bank.

Day Miller, Maysville, MO, for Respondent, Agribank, FCB.

Before ULRICH, P.J., and SPINDEN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Ryan Ruckman[1] appeals from the judgment of the Circuit Court of Gentry County distributing, pursuant to § 523.053,[2] the commissioners' award of $115,700 in a condemnation proceeding filed by the Missouri Highway and Transportation Commission (MHTC), condemning, *inter alia*, a portion of real property owned by the appellant, which was subject to a deed of trust executed by the appellant and his former wife in favor of the respondent, Commerce Bank, N.A. (Commerce), securing a promissory note. In its judgment, the trial court ordered that, pursuant to a condemnation acceleration clause in the deed of trust, Commerce was to receive $96,367.74 of the commissioners' award, representing the then balance due it under the note, with the appellant to receive the balance of the award, $19,332.26, subject to any lawful execution or garnishment, including the garnishment of the respondent, Agribank, FCB (Agribank), issued to satisfy a civil judgment obtained by it against the appellant for approximately $200,000.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in ordering the distribution of the commissioners' award because in doing so, it failed to comply with the provisions of § 523.053, requiring, *inter alia*, the court to determine the percentage of the award to which each party having a determinable interest in the condemned property was entitled. In Point II, he claims that the trial court did not, in effect, award him any portion of the commissioners' award and that it was error not to do so because it was against the weight of the evidence, in that the greater weight of evidence established that the appellant was "entitled to part of the condemnation proceeds to remedy the property to stay in business and that the mortgage holder [Commerce] was still adequately secured."

We affirm.

### Facts

On June 8, 2001, the MHTC filed a petition in the Circuit Court of Gentry County to condemn, for the purpose of widening Missouri Highway 136 in Albany, approximately 25% of the appellant's property, which the appellant had leased to a John Deere dealership. The petition, *inter alia*, named the appellant, Commerce, and Agribank as defendants claiming an interest in the property.

On July 20, 2001, the duly appointed condemnation commissioners assessed an award of $115,700 as net damages for the appropriation of the property. The appellant filed exceptions to the commissioners' report on July 27, 2001. The MHTC filed exceptions on July 30, 2001. On September 14, 2001, after the parties claiming an interest in the subject property were unable to reach an agreement on the distribution of the commissioners' award, Commerce, which held a first deed

---

1. Kimberly Ruckman, the appellant's former wife, was named as a party defendant in the condemnation proceeding. However, the record reflects that at the time of condemnation she had no interest in the subject property in that in her dissolution proceeding, the appellant received sole title to the property. Hence, in the condemnation distribution proceeding, Kimberly Ruckman was not treated by the trial court as having any interest in the distribution proceeds and, accordingly, did not file a notice of appeal from the court's judgment.

2. All statutory references are to RSMo 2000, unless otherwise indicated.

of trust on the subject property securing a promissory note executed by the appellant and his former wife, filed a motion for distribution of the award, as provided in § 523.053. In its motion, Commerce sought a distribution of the condemnation award equal to the balance then due it on the promissory note. In doing so, Commerce relied on a provision in the deed of trust, which provided that, if any part of the subject property was condemned by eminent domain, Commerce could "at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the property." [3]

Commerce's motion for distribution of the commissioners' award was heard on October 4, 2001. At the hearing the appellant appeared in person and by counsel. The only other defendants appearing were Commerce and Agribank, which appeared by counsel. Commerce presented the testimony of a senior vice president who stated that the amount due on the promissory note secured by the deed of trust, through October 4, 2001, was $95,444.34 and that it was accruing interest at the rate of $24.26 per day. The appellant testified that as a result of the condemnation proceeding he would lose the 25% of his property that fronted on the highway, on which was located the John Deere dealership sign, outdoor lighting, evergreen trees, some parking spaces, and a display area for machinery. He also testified that the loss of the property

would make access to the dealership more difficult, requiring that he construct two additional entrances.[4] As to Agribank, it did not present any evidence; however, counsel stated for the record:

> Your honor, our position is yesterday I had the circuit clerk issue a writ of execution in support of a garnishment summons out of a judgment case we have here. And we have a judgment that is approximately $200,000.00 against Mr. Ruckman. We had the sheriff serve Mr. Whitaker as the circuit clerk. Our theory is we have no objection at all to Commerce Bank's motion. In fact, we encourage the Court to sustain that. Our position is now by virtue of the garnishment summons that has been served ordering Mr. Whitaker that any damages the court might give to Ruckman should be paid to Agribank. We have a judgment and ask the garnishment summons be recognized.

On October 18, 2001, the trial court entered its judgment ordering that the commissioners' award be distributed as follows:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Clerk of the Circuit Court of Gentry County, Missouri shall distribute the proceeds referenced above, paid into this Court, regarding Tract 10 as follows:
>
> 1. $96,367.74 to Commerce Bank, N.A.

---

**3.** The appellant did not include the deed of trust in the legal file. However, where a statement of fact is asserted as true in both parties' briefs, we may consider the fact as though it appears in the record. *Estate of Russell*, 932 S.W.2d 822, 825 n. 4 (Mo.App. 1996).

**4.** The appellant acknowledged on cross-examination by Agribank that Bethany Trust Company (BTC), a named defendant in the condemnation action with respect to the ap-

pellant's property, had a civil judgment against him for approximately $400,000. There is nothing in the record, however, indicating that this judgment was secured by the subject property or that BTC had any other present legal interest in the property. BTC was not represented at the motion hearing, did not receive any of the proceeds of the commissioners' award, and did not file a notice of appeal.

2. The balance of the proceeds to Ryan Ruckman, subject to any lawful execution or garnishment which may affect these proceeds.

IT IS FURTHER ORDERED that Commerce Bank N.A. shall be entitled to 100% of the award as to the first $96,367.74 and that Defendant, Ryan Ruckman will have 100% interest in the balance of said award, said allocation is required by Chapter 523 RSMo.

This appeal followed.

### Standard of Review

■ Our review of the trial court's judgment distributing the condemnation proceeds is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. *banc* 1976). *Manfield v. Auditorium Bar & Grill, Inc.*, 965 S.W.2d 262, 266 (Mo.App.1998). "We must affirm the judgment of the trial court unless there is no substantial evidence to support it; it is against the weight of the evidence; or, it erroneously declares or applies the law." *Id.* (citation omitted).

### I.

■ In Point I, the appellant claims that the trial court erred in ordering the distribution of the commissioners' award because in doing so, it failed to comply with the provisions of § 523.053, requiring, *inter alia*, the court to determine the percentage of the award to which each party having a determinable interest in the condemned property was entitled. Specifically, the appellant contends that the trial court was required, but failed, in its judgment to set forth the specific percentages of the commissioners' award being distributed to each party of interest, totaling 100%.

Section 523.053 [5] governs the distribution of condemnation awards among the parties with a determinable interest in the condemned property. Section 523.053.1 provides that the parties found to have an interest in the condemned property may file either an agreement to distribute the commissioners' award, or if an agreement cannot be reached, a motion petitioning the court for a determination of the percentage of the award to which each of the interested parties is entitled. Where a motion is filed, § 523.053.2 provides:

> Within thirty days after the filing of such motion, the court having jurisdiction of said cause shall determine the percentage of the award to which each party having an interest therein is entitled. Any party aggrieved of the determination of interests made by the court shall have the right of appeal therefrom, and the same shall be considered as a final judgment for such purposes.

As to the application of the percentages, once determined by the trial court, § 523.053.3 provides:

> The respective interests of all parties in the award made as a result of the condemnation action, whether determined by said agreement or by the court, shall be final and shall extend by percentage to any additional compensation awarded or any reduction of the award thereafter made, together with interest, on the trial of exceptions, and said interest established shall be binding on all parties, plaintiff and defendant; provided, that when the determinable interest of any defendant is not related to the difference in the value of the property before and after the taking by condemnation, such share set out in the agreement or the court's finding thereof shall not be affected by any increase or reduction so

**5.** Pursuant to § 227.120(13), Chapter 523, governing procedure in condemnation proceedings, is made applicable to condemnations by the MHTC.

long as the final award is not less than such interest.

As noted in the facts, *supra*, the trial court in its judgment ordered that the commissioners' award of $115,700 be distributed as follows:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Clerk of the Circuit Court of Gentry County, Missouri shall distribute the proceeds [of the condemnation of the appellant's property] referenced above, paid into this Court, regarding Tract 10 as follows:

1. $96,367.74 to Commerce Bank, N.A.

2. The balance of the proceeds to Ryan Ruckman, subject to any lawful execution or garnishment which may affect these proceeds.

IT IS FURTHER ORDERED that Commerce Bank, N.A. shall be entitled to 100% of the award as to the first $96,367.74 and that Defendant, Ryan Ruckman will have 100% interest in the balance of said award, said allocation is required by Chapter 523 RSMo.

The appellant contends that the court's judgment does not satisfy the mandate of § 523.053.2, requiring the trial court to "determine the percentage of the *award* to which each party having an interest therein is entitled," (emphasis added), in that: (1) the trial court's distribution award to Commerce was stated as a percentage of the balance due it on the note and not as a percentage of the commissioners' award; (2) the distribution award failed to designate any percentage of the award to the appellant; and (3) the distribution award, making the remaining balance of the proceeds "subject to any lawful execution or garnishment which may affect [the] proceeds," which would include Agribank's garnishment to collect its $200,000 judgment, essentially awarded the entire remaining balance of the award proceeds to Agribank,[6] without setting forth the percentage of the commissioners' award that it was to receive.

In contending as he does in this point, the appellant asks us to interpret § 523.053.2, specifically the language: "shall determine the percentage of the award to which each party having an interest therein is entitled," as requiring the trial court to specify the percentage to which a defendant is entitled in terms of the commissioners' award and that the percentages so specified must total 100%. He argues that this interpretation is mandated not only by the language of § 523.053.2, but by the language of § 523.053.3, providing that the percentages established in accordance with § 523.053.2 are to extend to any increases or deductions in compensation after the trial of the exceptions. From this, he argues that the trial court's judgment distributing the condemnation proceeds is obviously deficient as to the mandate of § 523.053.2 in that it cannot be applied in any reasonable fashion to determine what percentages would apply with respect to any subsequent increases or reductions in compensation after a trial of the exceptions, in accordance with § 523.053.3.

While Commerce concedes that the trial court's judgment does not designate percentages of the commissioners' award totaling 100%, it contends, nonetheless, that the court's judgment complies with § 523.053 because its language effectuates the purposes of the statute in that it not only sets forth the percentages of the com-

---

**6.** Although the appellant refers to Agribank in his brief as the "garnishee," it is by definition the "garnishor."

missioners' award that each party is to receive, as required by § 523.053.2, but the language of the judgment can be applied to determine what is to occur in the case of an increase or reduction in compensation upon the trial of the parties' exceptions, as required by § 523.053.3. Thus, as the issues are framed by the parties, to resolve the appellant's claim in this point, we are required to interpret § 523.053.

 In interpreting statutes, we are to ascertain the intent of the legislature. *Habjan v. Earnest*, 2 S.W.3d 875, 881 (Mo. App.1999). In doing so, we are to give the language used its plain and ordinary meaning. *Id.* Where the legislative intent is made evident by giving the language employed in the statute its plain and ordinary meaning, we are without authority to read into the statute an intent which is contrary thereto. *Id.* "When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied." *Id.* (citation omitted).

Giving the language of § 523.053.2 its plain and ordinary meaning, it is clear that the legislature intended that the percentages of the commissioners' award that are to be determined by the trial court must be stated in terms of the total award, as the appellant contends. However, contrary to the appellant's claim in this point, it is also clear that the trial court's judgment does just that in that it expressly awards Commerce "100% of the award," with the appellant to "have 100% interest in the balance of said award," "subject to any lawful execution or garnishment which may affect these proceeds." While at first blush, the trial court's judgment would seem to be a contradiction in terms in that if Commerce was to receive 100% of the award, there would not be any proceeds to

distribute to the appellant. However, it is apparent that no such contradiction exists when one considers the additional language of the trial court's judgment limiting its award to Commerce to "the first $96,367.74." The inclusion of this cap language was necessary in order to reflect the fact that Commerce's interest in the subject property was limited to the balance due on the promissory note, $96,367.74. Given the fact that the commissioners' award was more than $96,367.74, the cap language of the trial court's distribution judgment resulted in Commerce actually receiving 83% ($96,367.74/$115,700) of the total award, not 100%, leaving the remaining balance, $19,332.26, representing 17% of the total award, to be distributed to the appellant, "subject to any lawful execution or garnishment which may affect these proceeds."

The appellant could conceivably argue that in accordance with § 523.053.2, the trial court, instead of awarding Commerce 100% of the award, not to exceed $96,367.74, should have simply awarded Commerce 83% of the award. While this approach would work to paint an accurate picture of what the trial court intended with respect to the distribution of the commissioners' award, it would have made it impossible for the court to comply with the mandate of § 523.053.3, requiring the percentages determined in accordance with § 523.053.2 to extend to any additional compensation awarded or any reduction of the award thereafter made on the trial of exceptions, and still effectuate the court's intended distribution as to any final award. This is so in that had the trial court awarded Commerce 83% of the commissioners' award, that percentage applied to any increase in compensation after the trial of exceptions would have resulted in Commerce receiving more than the $96,367.74 due and payable under the note. Obvious-

ly, the trial court did not intend such a result and, in fact, such a result could not stand on the facts of the case in that the maximum interest Commerce had in the property was $96,367.74, the balance due on the note. Likewise, had the trial court awarded Commerce 83% of the commissioners' award and a reduction occurred in the compensation after the trial on the exceptions, reducing the amount of compensation to an amount less than the debt owed Commerce, Commerce would have received less than 100% of the final proceeds, which was not the trial court's intent.

In light of the circumstances of this case, the only recourse open to the trial court to effectuate its desired distribution of the commissioners' award and still comply with the mandate of § 523.053.3 was to state the award's distribution in terms of the money due and owing Commerce under the promissory note. In that regard, applying the language of the trial court's judgment, it is clear that if there were an increase in compensation after the trial of the exceptions, Commerce would get none of the increase. The entire amount of the increase would go to the appellant, subject to any lawful execution or garnishment, which might affect the proceeds. Likewise, if there were a reduction in the commissioners' award, which resulted in a final condemnation award greater than the amount owed Commerce under the note, the appellant would suffer in the form of a refund the whole of that reduction. And, if there were a reduction in the commissioners' award, which resulted in a final award less than the amount owed Commerce, Commerce would be required to refund the difference between its distribution from the commissioners' award and the final award, with the appellant to refund the entire amount of its distribution from the commissioners' award.

In summary, we find that the trial court's judgment distributing the commissioners' award complies in all respects with the requirements of § 523.053.

Point denied.

## II.

■ In Point II, the appellant claims that the trial court did not, in effect, award him any portion of the commissioners' award and that it was error to do so because it was against the weight of the evidence in that the greater weight of the evidence established that the appellant was "entitled to part of the condemnation proceeds to remedy the property to stay in business and that the mortgage holder [Commerce] was still adequately secured." Specifically, the appellant claims that, although he was awarded the proceeds of the commissioners' award that exceeded the proceeds awarded to Commerce, he essentially received nothing in that the award to him was ordered subject to the $200,000 garnishment of Agribank and that the facts and equities of the case demanded that he receive a portion of the award.

As noted, *supra,* Commerce's § 523.053.1 motion for distribution of the commissioners' award was based upon the condemnation acceleration clause in the deed of trust, which provided that, if any part of the subject property was condemned by eminent domain, Commerce could "*at its election* require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the property." (Emphasis added.) In accordance with that clause, the trial court awarded Commerce 100% of the commissioners' award up to $96,367.74, the amount then due under the promissory note secured by the deed of trust. The appellant contends that the trial court erred in awarding Com-

merce the whole of the appellant's debt, arguing that the court, invoking its equitable powers and based on the greater weight of the evidence in the record, should have awarded him a sufficient portion of the award to allow him to remedy the effects of losing 25% of his property. In so contending, the appellant misunderstands the effect of the trial court's judgment distributing the commissioners' award and the equitable powers of our trial courts.

 Unless a contract is against public policy, it will be enforced by our courts as written. *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 627 (Mo. *banc* 1997). Courts will not interfere with a contract simply because it may work a hardship or later seem unfair to one of the parties. *Slusher v. Mid–America Broad., Inc.*, 811 S.W.2d 443, 446 (Mo. App.1991). "Equity may not be invoked to destroy an existing legal right." *Place v. P.M. Place Stores Co.*, 950 S.W.2d 862, 866 (Mo.App.1996) (citation omitted). Thus, a court of equity cannot intercede to prevent enforcement of a contract simply because enforcement may work a hardship upon one of the parties. *Mo. Goodwill Indus., Inc. v. Johannsmeyer*, 901 S.W.2d 154, 158 (Mo.App.1995).

The appellant does not challenge the acceleration clause of the deed of trust as being illegal or against public policy. As such, it is enforceable. In accord with that clause, the appellant contracted with Commerce that in the case of condemnation by eminent domain it could elect to apply the proceeds of the award either to the appellant's indebtedness or to the repair or restoration of the property. Commerce chose the former course of action. Thus, in distributing the commissioners' award as it did, the trial court was simply enforcing the deed of trust, specifically the condemnation acceleration clause, by which the appellant was legally bound. To claim as the appellant does in this point, he is essentially arguing that he should be, as a matter of equity, relieved of his contractual obligation to Commerce concerning the distribution of the commissioners' award. Equity cannot be invoked for that purpose. *Place*, 950 S.W.2d at 866.[7]

Even assuming that the trial court was free to ignore the condemnation acceleration clause in the deed of trust in distributing the commissioners' award and not award Commerce the total of the appellant's indebtedness to Commerce in the court's distribution award, Commerce, pursuant to that clause, would then have had the option of suing the appellant for those proceeds awarded to the appellant sufficient to satisfy the difference between the proceeds of the commissioners' award that were awarded to Commerce and the appellant's debt. Moreover, even assuming that the trial court would have been justified in awarding the appellant 100% of the commissioners' award, the award would still have been subject to Agribank's garnishment of $200,000. Thus, as a practical matter, even had the error alleged by the appellant in this point not have occurred, ultimately he would not have been in any better position than he finds himself now. Try as he might, the fact is that the appellant cannot escape his legal obligations to Commerce and Agribank created by the

7. In support of his claim of error in this point, the appellant cites *Cassville Sch. Dist. v. McArtor*, 286 S.W. 729 (Mo.App.1926) and Mo. Condemnation Practice, § 3.20 (MoBar 3d ed.1996) for the proposition that a court of equity, even in the face of a contractual provision, such as the condemnation acceleration clause here, can do equity and refuse to distribute the commissioners' award in accord with the contractual provision. We have read those cited authorities, neither of which stand for the proposition cited.

condemnation acceleration clause of the deed of trust and the garnishment.

Point denied.

## Conclusion

The judgment of the circuit court distributing the commissioners' award is affirmed.

ULRICH, P.J., and SPINDEN, J., concur.