**James Doyle BLACKBURN, Appellant,**

v.

**Deborah Jean (Blackburn) MACKEY, Respondent.**

**No. WD 62624.**

Missouri Court of Appeals,
Western District.

April 6, 2004.

Troy L. Daugherty, Kansas City, MO, for Appellant.

Janet Lee Sanders, Lee's Summit, MO, for Respondent.

Before VICTOR C. HOWARD, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, Jr., JJ.

JAMES M. SMART, Jr., Judge.

James Blackburn appeals the trial court's modification of the decree that dissolved his marriage to Deborah Mackey. He complains that the court lacked subject matter jurisdiction and that the court failed to base its Judgment on the parties' agreement with regard to child support and custody issues.

## Factual Background

The parties' marriage was dissolved in February of 1990 by the Greene County Circuit Court. Mother was awarded sole care and custody of the parties' only child, who was three-years old at the time. Father was awarded reasonable visitation rights and ordered to pay child support. The decree was modified in July 1992, adding visitation time for Father and increasing the child support. The modification included a provision for abatement of child support during summer visitation.

Allegations that Father abused the child generated a Jackson County juvenile case as well as a Jackson County criminal case. On September 24, 1998, the Jackson County Circuit Court found the child in need of the protection of the court due to Father's abuse. Pursuant to Chapter 211, the child was placed in Mother's custody, supervised by the Division of Family Services, and Father's visitation was restricted. In October 1998, the juvenile court (under a separate case number but still pursuant to Chapter 211) ordered Father to pay $484 a month in child support.

On July 12, 1999, the juvenile court entered a judgment that terminated all prior orders and provided for no contact between Father and the child, absent certain conditions. That order did not include any provision for child support.

In February of 2000, Father pleaded guilty to the charge of endangering the welfare of a child in violation of section 568.045 and was placed on five years' probation. As a condition of probation, Father was prohibited from having any contact with the minor child.

Mother filed this modification action in Greene County Circuit Court on September 14, 2000, pursuant to sections 452.370 and 452.400, RSMo 2000. She sought to modify the prior dissolution orders (which allowed Father to have visitation with the child) to make them consistent with the orders and judgments entered by the Jackson County Circuit Court in the juvenile case (which provided for no contact, absent certain conditions).

In May of 2002, this modification action was transferred to the same division of the Jackson County Circuit Court that had presided over the juvenile proceedings. The case was called up for hearing on February 6, 2003. The morning before the hearing, Father and Mother, with the help of counsel, came to a negotiated "general agreement" with regard to the modification issues. The general agreement was placed upon the record during the hearing by way of stipulations made in open court, counsel's statements, and submission of Mother's proposed judgment. Neither party testified at the hearing with regard to the terms of the agreement. Mother's income and expense statement and Form 14 were admitted into evidence. The court stated that it would release the juvenile case; there was an in-depth discussion regarding mediation and the payment therefor; and the court took the matter under advisement.

On February 11, 2003, Commissioner Geoffrey Allen issued his Findings and Recommendations and Modification Judgment which, in part, included language from Mother's proposed judgment. The Judgment ordered Father to pay $324.94 per month in child support with no abatements, granted Mother sole physical and legal custody of the child, and denied Father any visitation or telephone contact with the child. The order also required Father to pay a mediation fee of $240.00. The Commissioner's recommendation was transferred to the Presiding Family Court Judge, the Honorable W. Stephen Nixon, who, after adopting the Commissioner's Findings and Recommendations, entered Judgment on February 14, 2003. An "Order Releasing from Jurisdiction" was proposed in the Chapter 211 juvenile case by Commissioner Allen on February 13 and entered by Judge Nixon on February 14.

Father appeals.

### Point I: Lack of Jurisdiction

Father argues, first, that the trial court lacked subject matter jurisdiction to enter a Chapter 452 order that was inconsistent with the already existing Chapter 211 order, under which the court had assumed jurisdiction over the child and which had not been dismissed nor consolidated with the Chapter 452 action. Jurisdiction is a question of law that we review *de novo*. *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003).

Upon the commencement of the Chapter 211 juvenile case, the juvenile court obtained exclusive jurisdiction with regard to custody of the parties' child. *See* § 211.031.1. Section 211.093 "precludes the operation of any order affecting the status or custody of a minor child under [Chapter 452] that is inconsistent with an order entered under chapter 211." *In re J.F.K.*,

853 S.W.2d 932, 935 (Mo. banc 1993). That section states in relevant part that "[a]ny order or judgment entered by the court under authority of [Chapter 211] shall, so long as [it] remains in effect, take precedence over any order or judgment concerning the status or custody of a child under age twenty-one entered by a court under authority of chapter 452 ..., but only to the extent inconsistent therewith."

Here, Father points out that at the time of the hearing and entry of the judgment in the Chapter 452 dissolution case, the Chapter 211 action was still pending. He asserts that the juvenile court order of July 12, 1999, was still in effect. That order restricted contact between Father and child and terminated child support. Thus, Father argues, the Chapter 452 Judgment (that provides for child support, grants Mother sole legal custody, and allows Father no contact under any conditions) could not be entered because it was inconsistent with the extant order under Chapter 211. We disagree. For the reasons set forth more fully hereafter, we conclude that by the time the court in the dissolution case entered its order (February 14, 2003), the court had terminated its jurisdiction over the child in the juvenile case. Thus, there was no order "inconsistent with an order entered under Chapter 211" entered by the court in the dissolution case.

We see no problem with the simultaneous pendency of the two proceedings. Section 211.093 clearly contemplates the possibility of two proceedings involving the child. It simply provides that any conflict is resolved in favor of the order entered under Chapter 211. We recognize that some of the language of the court in *Ogle v. Blankenship*, 113 S.W.3d 290 (Mo.App. 2003), seems contrary. In *Ogle*, there was a consolidation of a dissolution case and a juvenile case pertaining to the same child.

*Id.* at 291. In that case, the juvenile court had taken jurisdiction because of alleged abuse by the mother. The juvenile court retained custody in DFS, and DFS placed the child with the father. The father then filed a motion in the dissolution to transfer custody to him (initially, the court had given physical custody to mother). The court in *Ogle* granted physical and legal custody to the father while the juvenile case was still pending. *Id.* On the appeal of the mother, the Eastern District held that because the juvenile case was still pending, the court did not have jurisdiction to modify the dissolution decree to grant custody to the father. *Id.* at 291–292.

The *Ogle* court relied on *In re J.F.K.*, 853 S.W.2d 932 (Mo. banc 1993),[1] in deciding that the orders in *Ogle* were "patently inconsistent" and that such an inconsistency could not be resolved by consolidation of the cases. *Ogle*, 113 S.W.3d at 292. The court concluded, "[r]ather than consolidate the cases, the court should have dismissed the motion to modify for lack of jurisdiction." *Id.*

Although we agree that the court in *Ogle* should have terminated the juvenile jurisdiction before transferring custody in the dissolution case, we disagree with the notion that any modification action should be dismissed whenever a juvenile case concerning the same child is pending. As we have noted, such a view does not seem in accord with the plain language of Section 211.093, which implies that such cases can co-exist by stating that juvenile court orders take precedence over dissolution orders "only to the extent inconsistent therewith."

In *J.F.K.*, the foster parents of a child in DFS custody filed an action to adopt the child. DFS immediately removed the child from the home of the foster parents. In the 211 case, the court awarded custody of the child to the maternal grandparents. The court in the 453 adoptive case then dismissed the adoption. The former foster parents appealed. The court held that the trial court properly dismissed the adoption action because it was fundamentally inconsistent with the pending 211 action.

In this case, in contrast to *J.F.K.*, the decision to grant custody to Mother was not fundamentally inconsistent with the juvenile court disposition, which had placed the child with Mother. Nor was the custody judgment entered while the 211 action remained pending. Such inconsistency as did exist was immaterial because jurisdiction over this juvenile case was relinquished by the court before the dissolution order was entered by the court. In *Ogle*, in contrast, the trial court did not terminate its jurisdiction in the juvenile case before entering its orders in the dissolution case.

The juvenile court here had the power to release the child and his parents from its jurisdiction in the Chapter 211 juvenile case *sua sponte:* "A judgment of the juvenile court under which the court retains jurisdiction over the juvenile may be modified or such jurisdiction terminated at any time on the court's own motion." Rule 119.09(a). The following excerpt from the hearing shows that the court intended to

---

1. Based on its analysis of Section 211.093, the Court in *J.F.K.* found that an order granting custody to prospective adoptive parents would be "patently inconsistent" with an earlier Chapter 211 order awarding custody to DFS. *J.F.K.*, 853 S.W.2d at 935. Thus, the Court concluded, the trial court lacked jurisdiction to proceed on the adoption action since the action was "preempted by the underlying child neglect case," and the lower court was correct in dismissing the adoption petition. *Id.* The *Ogle* court relies on this analysis to conclude that the juvenile and dissolution modification actions in that case were "patently inconsistent" as well. *Ogle*, 113 S.W.3d at 292.

release the juvenile case before ruling on the modification motion:

MS. SANDERS [counsel for Mother]: And, Your Honor, it's—it's the parties' understanding that this Court would enter an order of release of jurisdiction on the juvenile in the 211 case—

COMMISSIONER ALLEN: The Guardian is not going to object to that; is that correct?

MS. MANN [Guardian ad Litem]: No, Your Honor.

MS. SANDERS:—immediately preceding the entry of this 452 judgment, so that the Court would have jurisdiction to proceed in the 452.

COMMISSIONER ALLEN: Okay. There's no reason to maintain jurisdiction, is there, in the 211 case?

MS. HESSENFLOW [counsel for Father]: No. No. Not at all, Your Honor.

COMMISSIONER ALLEN: So be it. . . . .

And at the close of the proceedings, the Commissioner stated: "I'll go ahead and release the [juvenile case] and just take the matter under advisement so I can make whatever slight corrections I would need to make."

Judgment was entered releasing the child from juvenile jurisdiction by the Family Court Judge on February 14, 2003. Judgment was also entered by the Family Court Judge in the Chapter 452 case on February 14, 2003.[2]

■ Missouri adheres to the presumption that everything done by an officer in connection with the performance of an official act in the line of his duty is legally and rightfully done, absent proof to the contrary. *See United Mo. Bank of Kansas City v. March,* 650 S.W.2d 678, 680 (Mo. App.1983) (*quoting Woolridge v. La Crosse Lumber Co.,* 291 Mo. 239, 236 S.W. 294, 297 (1921)). "It is a rebuttable rather than a conclusive presumption [that] puts the burden of going forward with some substantial evidence on the party presumed against[.]" *Id.* at 680–81. In this case, since there is no evidence to the contrary, we must presume that the February 14 order releasing the juvenile case preceded entry of the modification order of the same date. *Id.*

It is evident from the court's rulings at the hearing, as well as the timing of the orders, that the court intended the juvenile case to be released prior to entry of the judgment in the modification case. The court recognized, however, that the release of the Chapter 211 orders must be closely coordinated with the Chapter 452 orders in order to ensure no significant lapse in the protection of the child. Because the modification case was transferred to the very division handling the juvenile case, it can be inferred that the court intended that the respective "no-contact orders" follow one another for the child's protection without any substantial interruption.

Accordingly, we reject Father's argument that because the juvenile action was still pending the court did not have subject matter jurisdiction. The court was not precluded from subject matter jurisdiction in the Chapter 452 modification case even while the juvenile case remained pending. There was neither a need to consolidate the cases, nor would consolidation have been invalid in these circumstances, because the two proceedings were not funda-

---

2. Pursuant to section 487.030.1, "[t]he findings and recommendations of the commissioner shall become the judgment of the court when adopted and confirmed by an order of a circuit ... judge." Thus, the judgments in both cases were rendered on February 14, 2003. The Commissioner's findings were entered on February 13 and February 11 respectively.

mentally inconsistent. We discern no lack of jurisdiction in the trial court at the time the Chapter 452 modification was entered.

Father also complains that the dissolution court lacked jurisdiction and therefore acted improperly by entering orders for mediation, holding a hearing, and entering findings and recommendations all prior to the release of the juvenile case. For the reasons recited above, these contentions also are without merit.

Point denied.

### Point II: Failure to Apply Parties' Entire Agreement

■ Father next contends that the modification order was not supported by the evidence and was against the weight of the evidence in that the Judgment was not consistent with the parties' agreement and there was no other independent evidence to support the court's findings and recommendations. Father complains that the court did not incorporate the parties' agreement in its entirety and made additional orders that were not part of the agreement. He refers specifically to the orders denying abatement of child support and allocating mediation fees to Father, neither of which was part of the agreement, according to Father.

■■ Review of a child support modification order is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Gibson v. Gibson*, 946 S.W.2d 6, 8 (Mo. App.1997). Thus, the decision will be affirmed if there is substantial evidence to support it, it is not against the weight of the evidence, and it does not erroneously declare or erroneously apply the law. *Id.* (*citing Murphy*, 536 S.W.2d at 32). Determinations as to modification of child support "lie[ ] 'within the legitimate discretion of the trial court[.]' " *Id.* at 8 (*quoting Luker v. Luker*, 861 S.W.2d 195, 198 (Mo. App.1993)).

On the morning of the hearing, the parties reached an oral agreement, according to Father, that resolved their disputes over support and custody of the child. The oral agreement was memorialized partially by counsel's statements at the subsequent hearing and partially by Mother's written "Proposed Judgment" submitted to the court. Father contends that with the submission of that agreement, "it became incumbent upon the trial court to draft its order reflecting the terms of the parties' settlement agreement." The Judgment was not completely in accord with the terms of the settlement agreement, Father alleges, in that it did not include a provision for abatement of child support and it assessed mediation costs against Father.

Mother contends that the parties agreed to eliminate the abatement provision and that it was included in the proposed judgment submitted to the court. She also asserts that the court's order that Father pay the mediation costs was well within the court's power and discretion.

■ In determining the sufficiency of the evidence, we accept as true the evidence and inferences therefrom that are favorable to the trial court's decision and disregard all evidence to the contrary. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). The parties did not testify at the hearing, but Mother's income and expense statement and her Form 14 were received as exhibits by the court. The evidence at the hearing consisted of counsel's statements and stipulations as well as Mother's proposed judgment. Because Mother's proposed judgment is not included in the record filed with this court, it is not clear whether a provision for "no abatement of child support" was included in the written agreement submitted or whether it may have been part of a verbal

agreement between the parties that was not submitted to the court.

█ The court in a dissolution or modification case is not bound by the terms of an agreement between the parties with regard to custody, support, or visitation of children. *See* § 452.325.2.[3] Stipulations regarding child support are advisory only; the court alone bears the ultimate responsibility of ensuring that a child support decree reflects the best interests of the child. *Arent v. Arent,* 759 S.W.2d 855, 856 (Mo.App.1988). The court had ample evidence in Mother's income and expense statement and her Form 14 to determine whether abatement of child support was proper. Furthermore, the court, being the same division that handled the juvenile case, was fully aware of Father's abuse of the child and the need to deny contact between Father and child. The court's Judgment denied Father any visitation; thus, retaining a provision for abatement during visitation would have been meaningless. Father's arguments with regard to abatement are without merit.

█ With regard to mediation fees, Mother concedes that the parties had not agreed on their allocation. She notes, though, that the parties advised the court as to the course of the mediation process. The court, therefore, had information before it concerning the mediation and properly ruled on that issue independent of the stipulations.

The trial court has authority to order mediation in cases involving disputes about child custody and visitation, pursuant to Rule 88.04(a). Jackson County Local Rule 68.12(3) requires all adult parties in a case where there is a dispute as to custody and visitation to participate in a minimum of two hours of mediation. And Jackson County Rule 6.2.5 grants the Family Court Administrative Judge the authority to enforce local mediation requirements. Under section 487.100, mediation costs may be assessed against any party as court costs.

The court entered a mediation order on June 10, 2002. Evidence adduced at the hearing showed that Father did not appear for two scheduled sessions and advised the mediator that he did not have the fee for the session that he did attend. There was also evidence as to the amount owed for mediation fees. The court did not err in assessing the mediation fees against Father. The order was supported by the evidence, was not against the weight of the evidence, and was well within the court's power and discretion.

Point denied.

### Conclusion

For the foregoing reasons, the judgment is affirmed.

HOWARD and LOWENSTEIN, JJ., concur.

---

**3.** That section states in relevant part:
In a proceeding for dissolution of marriage ..., the terms of the separation agreement, *except terms providing for the custody, support, and visitation of children,* are binding upon the court unless it finds ... that the separation agreement is unconscionable.
§ 452.325.2 (emphasis added).